

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. <br> RANDALL COLEMAN, <br><br> Petitioner, <br><br> v. <br><br> NEDRA CHANDLER, Warden, <br><br> Respondent. | ) <br> ) <br> ) <br> ) No. 10 C 50288 <br> ) <br> ) Judge Ruben Castillo <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Randall Coleman is serving concurrent twenty-two year sentences for the unlawful delivery of a controlled substance. Presently before the Court is Coleman's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"), which alleges that various constitutional and state law violations occurred in his state court proceedings. (R. 8, Pet.) For the reasons stated below, Coleman's petition for writ of habeas corpus is denied.

## BACKGROUND[1]

Coleman was arrested during a joint federal-state narcotics investigation. (R. 14, State Ct. R., Ex. A, *People v. Coleman*, 882 N.E.2d 1025, 1026 (Ill. 2008) ("*Coleman II*").) He was subsequently charged with two counts of unlawful delivery of a controlled substance. (*Id.*) Prior

---

[1] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome where the petitioner rebuts those facts by clear and convincing evidence. *Id.* The following summary of relevant facts is therefore properly derived from the state court opinions issued by Illinois courts and is supplemented where appropriate by the appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *accord Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010) (holding that although a federal court's review is limited to the last decision to address the arguments on the merits, its deference to factual findings in state court is not so limited).

to trial, Coleman filed a motion to suppress audio recordings of conversations between himself and a confidential informant, Eugene Sanders, that had been obtained during the investigation leading to his arrest. (*Id.*) In the motion, Coleman argued that the recordings were obtained in violation of the Illinois eavesdropping statute, 720 Ill. Comp. Stat. 5/14-1 *et seq.*, and should be suppressed under the Illinois Code of Criminal Procedure of 1963, 725 Ill. Comp. Stat. 5/108A-9. (*Id.*) He acknowledged that the recordings were obtained lawfully under federal law, and that recordings made during a joint federal-state investigation are admissible under Illinois case law unless there is evidence of collusion between federal and state agents to avoid the requirements of the eavesdropping statute. (*Id.*) Coleman argued that such collusion existed in his case. (*Id.*) The trial court denied Coleman's motion, and the recordings and transcripts of the recordings were introduced at trial. (*Id.*) The trial court also denied Coleman's motion *in limine* requesting the exclusion of statements he made to a police officer following his arrest. (R. 14, State Ct. R., Ex. E, *People v. Coleman*, No. 2-05-0482, at A6 (Ill. App. Ct. 2d Dist. 2007) (unpublished) ("*Coleman I*").)

At trial, the State presented the testimony of two law enforcement officials involved in the investigation and arrest of Coleman, the confidential informant, and a forensic scientist. The relevant testimony and evidence at trial established that Coleman's arrest arose out of an investigation by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Addison police department, the Wheaton police department, and the DuPage County sheriff's office. (*Coleman II*, 882 N.E.2d at 1026.) The investigation began in 2001 around the "open air drug market" at the Bradford Court apartments in Addison, Illinois, and eventually targeted mid-level drug dealers in other municipalities. (*Id.* at 1027.)

Detective Dan Raysby of the DuPage County sheriff's office narcotics unit testified first. Raysby testified that he and ATF Agent Tom Murphy met with Sanders, a dealer and friend of another informant in the investigation, in July 2003. (*Id.*) Sanders agreed to participate in a controlled purchase of narcotics from his supplier, Coleman, and Agent Murphy obtained authorization for Sanders to wear a recording device. (*Id.*)

The first recordings and controlled purchase occurred on August 4, 2003. Raysby testified that he met with Sanders at his apartment that day, and recorded three conversations that Sanders had with Coleman on the telephone. (*Id.*) Later that afternoon, Raysby searched Sanders, equipped him with a recording device, and gave him $200 to purchase drugs from Coleman. (*Id.*) Raysby then watched as Coleman arrived in a vehicle in the parking lot of Sanders' apartment building, where Sanders was waiting. (*Id.*) Sanders and Coleman walked to an alley behind the building, and soon returned to the parking lot. (*Id.*) After Coleman left, Sanders gave Raysby a plastic bag containing one-quarter of an ounce of crack cocaine. (*Id.*) He no longer had the money that Raysby had given him. (*Id.*) Raysby testified that he maintained surveillance through this entire transaction. (*Id.*)

The second set of recordings and the second controlled purchase occurred a few days later, on August 7, 2003. That day, Raysby again met with Sanders at his apartment, and recorded four conversations Sanders had with Coleman on the telephone. (*Id.*) At 3:30 p.m., Raysby searched Sanders, equipped him with a recording device, and gave him $600 to purchase drugs from Coleman. (*Id.*) Raysby watched, and videotaped, as Coleman drove into the parking lot, exited his vehicle, walked to the alley where Sanders was waiting, and handed him a plastic bag. (*Id.*) After Coleman left the parking lot, Sanders gave Raysby a plastic bag containing

3

three-quarters of an ounce of crack cocaine. (*Id.*) The videotape from August 7th was shown to the jury. (*Id.*) According to Raysby's testimony, Agent Murphy was present on both August 4 and 7, 2003. (*Id.*)

Sanders was the second witness, and his testimony largely reiterated the events recounted in Raysby's testimony. (*Id.* at 1027-28.) He also testified regarding his three prior felony convictions, his cooperation agreement with Raysby and the ATF, and his relationship with Coleman. (*Id.*) Sanders was serving a prison sentence at the time of his testimony. (*Id.* at 1028)

The State next presented the testimony of Claire Donaghey, a forensic scientist for the DuPage County sheriff's office. (*Id.*) She testified that the bag obtained on August 4th contained 6.68 grams of cocaine, and the bag from August 7th contained 19.55 grams of cocaine. (*Id.*)

William Cooley, a Wheaton police officer, was the final witness for the State. (*Id.*) He testified that Coleman was arrested on August 20, 2003. (*Id.*) Cooley spoke with Coleman in a squad car after his arrest, and Coleman surmised that someone had set him up because he had "never sold to an undercover officer." (*Coleman I*, at A5.) When Cooley asked Coleman if he worked, Coleman responded that "selling drugs is all he knows, and all he is good at." (*Coleman II*, 882 N.E.2d at 1028.) Coleman also told Cooley that he purchased his cocaine from Robert Ptak, who obtained his cocaine from Chicago. (*Coleman I*, at A5.)

Following Cooley's testimony, the State rested. Coleman presented Sanders' "source of information" agreement into evidence and also rested. (*Coleman II*, 882 N.E.2d at 1028.) The jury convicted Coleman on both counts. (*Id.*) The trial court denied a post-trial motion filed by

4

Coleman in which he argued that the court erred in denying his motion to suppress the audio recordings. (*Id.*)

On March 15, 2005, Coleman's sentencing hearing was held. (*Coleman I*, at A6.) At the hearing, Coleman's half-brother, Clifton Hall, testified that Coleman had been diagnosed with bipolar disorder. (*Id.*) Hall stated that when Coleman is on his medication, he is a good, loving person, but that when he is off his medication, he is withdrawn and not his normal self. (*Id.*) Coleman's mother, Eularia Coleman, testified that Coleman was more moody and a little withdrawn when he was not on his medication. (*Id.*) The trial court sentenced Coleman to two concurrent 22-year terms of imprisonment. (*Id.*) On May 16, 2005, the trial court denied Coleman's motion to reconsider his sentence. (*Id.*)

Coleman appealed his conviction and sentence to the Appellate Court of Illinois, Second Judicial District ("state appellate court"). On appeal, Coleman argued that: (1) the trial court erred in admitting Coleman's statements that were recorded in violation of the Illinois eavesdropping statute; (2) the trial court abused its discretion in failing to exclude Coleman's statements that were meant to serve as a plea negotiation with the State; (3) the trial court erred when it denied Coleman's motion for a new trial because the prosecutor's remarks during closing arguments caused Coleman substantial prejudice and unduly influenced the verdict; and (4) the trial court abused its discretion in sentencing Coleman to 22 years because it failed to take into account Coleman's bipolar disorder as a mitigating factor. (R. 14, State Ct. R., Ex. B., Pet'r Br., No. 2-05-0482; *Coleman I*, at A6.) The state appellate court considered, and ultimately rejected, each of Coleman's arguments and affirmed both his conviction and sentence on February 23, 2007. (*Coleman I*, at A6-A21.)

The Illinois Supreme Court granted Coleman's subsequent petition for leave to appeal ("PLA"). The single argument raised by Coleman on this appeal related to the Illinois eavesdropping statute issue. (PLA from Ill. App. Ct., 2d Dist., No. 2-05-0482, of Randall Coleman, 2007 WL 5255221 (Mar. 28, 2007); R. 14, State Ct. R., Ex. F, Pet'r Br., No. 104386.) On February 7, 2008, the Illinois Supreme Court affirmed the appellate court's judgment. (*Coleman II*, 882 N.E.2d at 1032.) Coleman did not file a petition for a writ of certiorari in the U.S. Supreme Court. (R. 8, Pet. at 2.)

On April 14, 2008, Coleman filed a *pro se* petition for state post-conviction relief in the Circuit Court of DuPage County. (R. 14, State Ct. R., Ex. I, State Post-conviction Pet.) In his petition, Coleman argued that: (1) he was denied his right to compulsory process to compel the testimony of the federal agent involved in procuring the recordings admitted at trial; (2) the arrest warrant was based on "patently untrue" information, and his trial counsel was ineffective for failing to move for a *Franks* hearing to determine the credibility of the information presented to the warrant-issuing judge; (3) his trial counsel was ineffective for failing to interview Agent Murphy to develop the factual basis for an argument that the eavesdropping order was secured by collusion; and (4) his appellate counsel was ineffective for not raising trial counsel's ineffectiveness on appeal. (*Id.* at C27-C28.) The state trial court rejected each of these arguments and summarily dismissed the petition on June 12, 2008. (R. 14, State Ct. R., Ex. J., *People v. Coleman*, No. 03 CF 2273, Mem. Opinion, at 4-6 (June 12, 2008) (unpublished) ("*Coleman III*").)

Coleman appealed the dismissal of his post-conviction petition. On July 17, 2009, Coleman's appointed counsel moved to withdraw as counsel pursuant to *Pennsylvania v. Finley*,

481 U.S. 51 (1987). (R. 14, State Ct. R., Ex. K, *Finley* Mot.) Coleman filed a response, objecting to the withdrawal of appointed counsel. (R. 14, Stat Ct. R., Ex. L, *Finley* Resp.) On September 30, 2009, the state appellate court affirmed the dismissal of Coleman's state post-conviction petition. (R. 14, State Ct. R., Ex. M, *People v. Coleman*, No. 03-CF-2273, Summary Order (Sept. 30, 2009) (unpublished) ("*Coleman IV*").)

Coleman subsequently filed a PLA in the Illinois Supreme Court. In his PLA, he claimed that: (1) his trial and appellate counsel was ineffective for failing to interview Agent Murphy to develop the basis for an argument that the eavesdropping order was secured by collusion; (2) his appellate counsel was ineffective for not raising trial counsel's ineffectiveness on appeal; (3) he was denied his right to compulsory process to compel the testimony of the federal agent involved in procuring the recordings admitted at trial; (4) the arrest warrant was based on "patently untrue" information, and his trial counsel was ineffective for failing to move for a *Franks* hearing; (5) his *pro se* petition for post-conviction relief presented an arguable basis in law and fact and the trial court erred in summarily dismissing the petition; and (6) the appellate court's decision conflicted with a decision of the Supreme Court or another appellate court. (R. 14, State Ct. R., Ex. N, PLA, *People v. Coleman*, No. 109428, at 2-3; Ex. L, *Finley Resp.* at 4.) The Illinois Supreme Court denied Coleman's PLA on January 27, 2010. (R. 14, State Ct. R., Ex. O, *People v. Coleman*, No. 109428, Order (Jan. 11, 2010) (unpublished).)

Coleman filed his *pro se* federal habeas petition pursuant to Section 2254 in December 2010. (R. 8, Pet.) In his petition, Coleman presents the following claims: (I) the trial court erred in denying Coleman's motion to suppress his recorded statements because they were recorded in violation of the Illinois eavesdropping statute, and state and federal authorities colluded to avoid

the requirements of the statute; (II) the trial court erred in denying Coleman's motion in limine seeking to exclude certain statements he made in the course of plea negotiations; (III) the prosecutor's closing argument deprived Coleman of a fair trial; (IV) the trial court failed to consider Coleman's bipolar disorder and potential for rehabilitation as mitigating factors at sentencing; (V) the trial court denied Coleman's right to confront witnesses because Agent Murphy was not called to testify; (VI) Coleman's counsel was ineffective for failing to interview federal agents and request a *Franks* hearing; and (VII) Coleman's post-conviction appellate counsel was ineffective for failing to raise appealable issues. (*Id.* at 7-19.)

On February 18, 2011, Respondent filed an answer which set forth various grounds to deny Coleman relief. (R. 13, Answer.) Specifically, Respondent contends that Coleman's claims are non-cognizable, procedurally defaulted, and/or insufficiently pleaded under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. (*Id.*) It is undisputed that Coleman's claims are not barred on statute of limitations or retroactivity grounds. (*Id.* at 4-5.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief only when a petitioner has shown, first, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 29 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") Second, when a state court has ruled on the merits of a habeas claim, the petitioner "must also show that his detention was the result of a state court decision (1) 'contrary to, or involv[ing] an

8

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. § 2254(d)).

The Supreme Court has noted that AEDPA's complex and highly deferential standard is "difficult to meet." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). Under the first prong of Section 2254(d), "[a] decision is 'contrary to' federal law when the state court applied a rule that 'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010) (quoting *Terry Williams v. John Taylor*, 529 U.S. 362, 405-06 (2000)). The statutory phrase "clearly established Federal law as determined by the Supreme Court of the United States," is a critical limitation under Section 2254(d)(1) and refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 412).

To succeed on a claim predicated on Section 2254(d)'s second prong, the "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable' and 'well outside the boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th

Cir. 2009)). Additionally, a state court decision may be considered unreasonable where it is in "tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006) (internal quotation marks and citation omitted); *see also Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) ("A state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." (citing *Williams*, 529 U.S. at 407)). Put simply, "a state court's decision 'minimally consistent with the facts and circumstances of the case' is not unreasonable[.]" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

As a general matter, under post-AEDPA habeas law, federal courts defer to a great extent to the decisions of state courts, and review those decisions for reasonableness only. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ANALYSIS

I. **Coleman's claims**

   A. **Claim I is not cognizable on habeas review**

Respondent contends that Coleman's first claim regarding the violation of the Illinois eavesdropping statute is "non-cognizable because it raises only an issue of state law." (R. 13, Answer at 10.) "The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th

Cir. 2004). This means that federal courts do not sit in review of a state court's application of its own state law. *See, e.g., Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal citations and quotation marks omitted)); *Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) ("We may not review state-court interpretations of state law."). "To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'" *Perruquet*, 390 F.3d at 551.

Here, the Court finds that Claim I presents no federal issue. In Claim I, Coleman contends that the trial court erred in denying his motion to suppress his recorded statements because they were recorded in violation of the Illinois eavesdropping statute, and that state and federal authorities colluded to avoid the requirements of the statute. (R. 8, Pet. at 6.) Even construing Coleman's petition liberally, as the Court must due to its *pro se* nature, *Perruquet*, 390 F.3d at 512, it does not suggest that this claim implicates any federal constitutional right. In fact, both times Coleman previously asserted this claim on direct review of his conviction, he conceded that the recordings complied with federal law. (*See Coleman II*, 882 N.E.2d at 1029, n.1 ("The defendant raises no federal constitutional issue in this case. Indeed, there is no constitutional issue here: '[E]avesdrops made with one-party consents are not in violation of the fourth amendment.'" (citations omitted)); Ex. B, Pet'r Br. at 11 ("Even though the federal standards for overhears were followed, Coleman's conversations with [the informant] were recorded in violation of the [Illinois eavesdropping law].").) Accordingly, because Claim I alleges only an error of state law, it is not cognizable on habeas review.

B.   **Claims II, III, and IV are procedurally defaulted**

11

Respondent next argues that several of Coleman's claims have been procedurally defaulted. Before a federal court can consider a habeas petition on the merits, a petitioner must satisfy several procedural requirements. First, a petitioner must have "give[n] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Guest v. McCann*, 474 F.3d 926, 929-30 (7th Cir. 2007) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). As relevant here, "[i]f the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Boerckel*, 526 U.S. at 844-45). "When a petitioner has not properly asserted his federal claims at each level of review and it is clear that the state courts would now hold those claims procedurally barred, federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (citations omitted).

In this case, it is evident that Coleman failed to invoke "one complete round" of the state appellate review process for Claims II, III, and IV. Although Coleman presented these claims to the state appellate court on direct review, he did not assert them in his PLA and briefing before the Illinois Supreme Court. (*See* PLA from Ill. App. Ct., 2d Dist., No. 2-05-0482, of Randall Coleman, 2007 WL 5255221 (Mar. 28, 2007); R. 14, State Ct. R., Ex. F, Pet'r Br.) Instead, the sole issue Coleman presented to the Illinois Supreme Court related to the violation of the Illinois eavesdropping statute. (*Id.*) He also failed to raise these claims at any stage in his state post-conviction proceedings. (*See* R. 14, State Ct. R., Ex. I, State Post-conviction Pet.; R. 8, Pet. at 8,

10-11.) Thus, the Court finds that Coleman did not properly assert Claims II, III, and IV at each level of review in the state courts.

Further, it is clear that the Illinois courts would hold that Claims II, III, and IV are procedurally barred. The Illinois Post-Conviction Hearing Act (the "Act") contemplates the filing of only one petition, and "a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Caballero*, 688 N.E.2d 658, 661 (1997) (citations omitted); *cf. People v. Erickson*, 641 N.E.2d 455, 458 (1994) ("Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding."). In 2008, Coleman filed a state post-conviction petition, which failed to include Claims II, III, and IV. Since he could have raised these claims, but failed to do so, the state court would now hold that these claims are procedurally defaulted.

Because Coleman failed to exhaust Claims II, III, and IV in the state court, and the time to do so has passed, the federal procedural default doctrine places these claims outside the scope of federal habeas review unless Coleman can "can demonstrate either cause for the default and prejudice or that ignoring the default is necessary to prevent a fundamental miscarriage of justice." *Guest*, 474 F.3d at 930 (citation omitted). To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court. *Perruquet*, 390 F.3d at 514. "To establish prejudice, he 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152

13

(1982)). "If the petitioner cannot show cause and prejudice but instead seeks to overcome his procedural default by establishing the prospect of a miscarriage of justice, then he must demonstrate that he is actually innocent of the crime for which he was convicted–that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

Here, Coleman cannot make either showing.[2] Even if Coleman were to contend that the attorney who represented him on appeal to the Illinois Supreme Court provided ineffective assistance by failing to assert these claims in his PLA, this argument would fail for two reasons. First, this argument would be procedurally defaulted. While "[i]neffective assistance of counsel can constitute cause to set aside a procedural bar," *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010), "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986); *see also Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Here, Coleman made no mention of the attorney who represented him on appeal to the Illinois Supreme Court in his state post-conviction petition and related filings, and such an argument has thus been procedurally defaulted. (*See* R. 14, State Ct. R., Ex. I, State Post-conviction Pet. at C28; Ex. L, *Finley* Resp. at 4.)

Second, even if the argument were not defaulted, it would fail on the merits because Coleman lacks a Sixth Amendment right to effective counsel in a discretionary appeal to the

---

[2] Coleman has not filed a reply to Respondent's Answer, nor requested to do so in the year since the filing of the Answer. Coleman is free to file a motion for reconsideration, however, if he can make a showing of cause and prejudice for his defaulted claims under the law set forth in this opinion.

Illinois Supreme Court. The constitutional right to counsel is a manifestation of the Sixth Amendment right to counsel; thus, where there is no right to counsel–such as in a discretionary appeal–there cannot be "ineffective assistance of counsel." *See Finley*, 481 U.S. at 555 ("Our cases establish that the right to appointed counsel extends to the first appeal of right and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."); *McCray v. Rednour*, 441 Fed. Appx. 376, 380-81 (7th Cir. 2011) (unpublished) ("[A] state discretionary appeal, such as an appeal to the Illinois Supreme Court, is not an appropriate basis for a claim of ineffective assistance of counsel because a petitioner 'does not have a constitutional right to counsel to pursue discretionary state appeals.'" (quoting *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)). Accordingly, any failure by Coleman's attorney to raise Claims II, III, and IV in his PLA did not deprive Coleman of his Sixth Amendment right to effective assistance of counsel and cannot constitute cause for his failure to raise these claims in one complete round of state court review. *See Terrell v. Godinez*, No. 93-1794, 1994 WL 47140, at *4 (7th Cir. 1994) (unpublished) ("Ineffective assistance on a discretionary appeal to the Illinois Supreme Court . . . cannot constitute cause [for procedural default].")

Coleman also does not make any claim of actual innocence, and thus cannot meet the high burden of establishing that the failure of the Court to consider Claims II, III, and IV would be a miscarriage of justice. Accordingly, because Coleman did not present Claims II, III, and IV for one full round of review in the Illinois courts and cannot show cause and prejudice for this failure, the Court concludes that Claims II, III, and IV are procedurally defaulted and cannot be reviewed on their merits.

### C. Claims V and VI are procedurally defaulted

In Claims V and VI, Coleman asserts claims that he raised in his state post-conviction proceedings. (R. 8, Pet. at 17-18.) Respondent contends that such claims are procedurally defaulted because they were rejected by the state courts based on "an independent and adequate state law ground of decision barring federal habeas relief." (R. 13, Answer, at 13.)

In addition to precluding a federal court from reaching the merits of a habeas claim where a petitioner has failed to fairly present the claim to the state courts, the procedural default doctrine also bars review of a claim where that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds. *Perruquet*, 390 F.3d at 514. In other words, if the state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then a federal court is unable to consider that claim on collateral review. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)). Under this rule, "if a state court did not reach a federal issue because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice." *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (internal quotation marks and citation omitted).

In Claim V, Coleman contends that the trial court denied him his "right to confront witnesses." (R. 8, Pet. at 17.) Coleman specifically identifies Agent Murphy as the witness that should have been called to testify, and contends that his testimony could have proven collusion between the state and federal authorities to circumvent the requirements of the Illinois

eavesdropping statute. (*Id.*)³ In Claim VI, Coleman alleges that his trial counsel provided ineffective assistance of counsel for failing to interview Agent Murphy "to ask about collusion" and to conduct a *Franks* hearing "to determine said evidence of collusion and the authorities not complying with the Illinois eavesdropping statute." (*Id.* at 18.)

The state appellate court affirmed the summary dismissal of both of these claims in Coleman's state post-conviction petition for failure to comply with 725 Ill. Comp. Stat. 5/122-2, a provision of the Act that requires that a post-conviction petition must "have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." (*Coleman IV*, at 2.) Regarding the allegations found in Claim V that Coleman was denied his right to call Agent Murphy to testify, the state appellate court first noted that this claim was "only viable to the extent that it is directed at counsel" because "it was up to defendant's trial counsel, not the trial court itself, to subpoena witnesses." (*Id.*)⁴ Construing the claim as one asserting that trial counsel was ineffective for failing to call certain witnesses, the state appellate court held that Coleman's petition failed because he did not attach any affidavits from the witnesses he contended that his trial attorney should have called, or explain the absence of such affidavits. (*Id.*)

---

³ Although Coleman did not phrase any claims in his state post-conviction petition in the same exact manner, the Court construes Claim V to be the compulsory process clam he asserted in his state post-conviction petition.
⁴ The Court agrees with this interpretation of Coleman's claim as the record was clear that he was represented by counsel, and though he disagreed with his trial counsel's decision not to call Agent Murphy, the trial court gave Coleman the opportunity to represent himself and subpoena Agent Murphy, which he declined. (*See* R. 14, State Ct. R., Ex. P at C393-97.) Thus it was the decision of Coleman's trial counsel, not the trial court, that resulted in Agent Murphy not being called to testify.

The state appellate court also affirmed the dismissal of the allegations in Claim VI in Coleman's state post-conviction petition without reaching the merits for failure to comply with the statutory requirements of 725 Ill. Comp. Stat. 5/122-2. (*Id.*) Specifically, regarding Coleman's *Franks* hearing argument, the state appellate court stated that "although defendant alleges that counsel should have requested a *Franks* hearing because an arrest warrant was based on information that was 'patently untrue,' he does not specify any such information, much less submit evidence of its falsity. A bare conclusion is insufficient to support a postconviction claim." (*Coleman IV*, at 2 (citing *People v. Coleman*, 183 Ill.2d 366, 381 (1998)).) Regarding Coleman's claim that his trial counsel was ineffective for failing to interview Agent Murphy, the state trial court stated that "because counsel *did* move to suppress evidence, defendant's claim must be, again, that counsel failed to present the witness he allegedly should have interviewed. That claim fails, again, because of the lack of the required affidavit or an explanation for its absence." (*Id.* at 3.)[5]

The Court concludes that the state appellate court's decision affirming the dismissal of the allegations in Claims V and VI for failure to comply with 725 Ill. Comp. Stat. 5/122-2 rested on an independent and adequate state-law procedural ground. *See United States ex rel. Barbosa v. Hardy*, No. 11 C 1622, 2011 WL 5592845, at *7 (N.D. Ill. Nov. 14, 2011) (holding that the state appellate court's dismissal of petitioner's claim for "his failure to meet the requirements of 725 ILCS 5/122-2" was an adequate and independent state ground for resolving the claim);

---

[5] Coleman did provide his own affidavit in support of his allegations. (R. 14, State Ct. R., Ex. I, State Post-conviction Pet. at C36-37.) The affidavit merely attests to the truthfulness of his allegations, however, and does not provide any evidentiary support for his collusion theory, the allegation that his trial counsel failed to speak with Agent Murphy, or that there were any false statements in his arrest warrant.

*United States ex rel. Simon v. Rednour*, No. 11 C 6795, 2011 WL 478521, at *2 (N.D. Ill. Oct. 6 2011) (same); *United States ex rel. Nichols v. Hardy*, No. 11 C 2059, 2011 WL 4585577, at *6 (N.D. Ill. Sept. 30, 2011) (same). Accordingly, Claims V and VI are procedurally defaulted.

### E. Claim VII is not cognizable on habeas review

Coleman's final claim is that his post-conviction appellate counsel was ineffective because he moved to withdraw and failed to raise the other claims now asserted by Coleman. (R. 8, Pet. at 19.) This claim fails, however, because it is well-established that ineffective assistance of post-conviction counsel claims are not cognizable on collateral review because criminal defendants do not have a Sixth Amendment right to post-conviction counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citation omitted). Section 2254 accordingly provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i). Coleman's final ground for habeas relief is therefore denied as non-cognizable on federal habeas review.

## II. Certificate of appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Coleman a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Ct. of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Holland must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that jurists of reason would not find it debatable whether Claims I and VII of Coleman's petition are cognizable on federal habeas review. Further, jurists of reason would not find it debatable whether Claims II-VI of Coleman's petition are procedurally defaulted. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, Coleman's petition for habeas corpus (R. 1; R. 8) is DENIED. The Clerk of the Court is directed to enter a final judgment against Petitioner. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated above.

Entered: _____
**Judge Ruben Castillo**
**United States District Court**

**Dated:** February 16, 2012